Next case, People v. Weiss Good morning, counsel. How are you doing? Couldn't be better, your honor. Good morning. Go ahead. May it please the court, counsel, for the audio record, my name is Curtis Blood and I represent the defendant appellant, Todd Weiss. Todd Weiss is at Big Money, serving a five-year sentence for aggravated battery consisting of pushing a police officer. Of course, you don't have to do harm in that situation. It simply needs to be defensive contact. And a jury found Mr. Weiss guilty of that charge. The only question here is whether he was proved guilty beyond a reasonable doubt. Or, more specifically for this court, the Jackson v. Virginia standard, which is whether any rational trier of fact could have found on this proof that beyond a reasonable doubt, Todd Weiss knew the man he was about to push was a policeman. The jury heard nine witnesses, three of which are irrelevant, four of which were patrons at the Crossroads Bar, and the other two were officers. One was a duty patron, he was an off-duty patron of the bar. And of those, all six of those witnesses gave an account of the events, and basically, making a much longer story short, there was a disturbance in the bar, and Mr. Weiss was escorted from the bar toward the back door with the intention of taking him out the door. Escorted by the off-duty officer, long-time Sandoval officer, Lyons. When they got to the back door, the two of them, one of the four, one of the four people involved in the disturbance, also a witness at trial, was at the back door. And so the officer and Weiss turned around and headed toward the front door of the Crossroads Bar. Again, the off-duty officer escorted Mr. Weiss out of the bar. And by the way, there's no hint that Mr. Weiss gave Officer Lyons any trouble at all, all the way. Officer Lyons recognized Weiss, and Officer Lyons didn't break so much as a fingernail, escorting him toward the back door, turning around, coming back to the front. And finally, leaving him in the parking lot, turning him loose in the parking lot, wasn't in custody, wasn't in question, he was simply out in the parking lot. Now, police had been called, rising out of this disturbance, and when Mr. Weiss got out the door, the front door, Officer Westman was in the parking lot, Ms. Carr was in the parking lot, and it doesn't take much longer for it to have happened than it does to say it. Mr. Weiss got out the door, kicked the car, looked up, saw Wathen, who was talking to the officer, and called her several names and charged her. The officer stood his ground. Weiss pushed the officer who was standing behind him. Weiss continued on. The officer tried to get hold of him again, he was pushed again. And at that point, the off-duty officer, Lyons, grabbed Mr. Weiss, who was cooperative from then on. As Officer Lyons told him that he was under arrest for pushing Officer Westman. Now, did that officer hit the ground, the one, the active officer? The off-duty officer? No, the active officer. No, Your Honor, he did not. Everybody agrees he did not. But of course, harm is not an element of this offense. Several facts are obvious from the evidence. Number one, no one told Mr. Weiss or said in his presence that the police had been called or that the police were present. Nobody said in his presence or said to him, he's an officer. There's no evidence that the word police or officer was anywhere on the officer. He was wearing a polo shirt with a thread badge, not a regular badge, and his name on it, no hat. Did he have his duty belt on? He did, and that's exactly what they called him, Your Honor, exactly what they called him. And significantly, of course, he was carrying a firearm and a belt. The car was also unmarked. There's no evidence that the word police appeared anywhere on the car. There's no evidence that the emergency lights on it were visible from outside the car, which happened to be almost 2 o'clock in the morning. No evidence that the word police or the word officer was on the person of the officer. The jury did not have the opportunity to see the vehicle. There were no photographs and evidence. The jury did not get to see the shirt, the polo shirt the officer was wearing. It had to go by description. And that was made by the description of the officer on stand when he testified? He did. Others referred to him in passing, but he referred to it himself. He said his name was embroidered on the shirt. A badge shape, he said it was a star, was embroidered on the shirt. If there was anything printed on it, he didn't say that there was. And the illumination that night? The officer said that he could see well enough to read, to write. He was going to make notes. And he could see that well. Actually, for purposes of the jury, we argued that Mr. Weiss couldn't see that well, but I'm afraid I have to concede to this court. He could see what there was to see. I mean, the officer was wearing a gun. The jury could have found that Mr. Weiss saw the gun. I can't stand up here and argue that Mr. Weiss didn't see the gun. I think this court, under the Jackson v. Virginia standard, has to assume that my client saw the gun. And that's why we're going to some lengths to show that carrying a sidearm is not unique to police officers. That there's a statute that gives all of the police officers the authority to carry a sidearm in public. And these are all armed personnel, security, detectives. There are other people besides police officers that can have sidearms. And a little sidearm, well, I think it's fair to say, in fact, it's fair to say, that when Mr. Weiss came out of that bar, and I know he'd been drinking, and I know there'd been a little disturbance, but still, he should have suspected when he saw the gun, he should have suspected that the man was an officer. I mean, he certainly couldn't have assumed he'd bought it. But, the reason I'm conceding that is because I'm going to turn right around and say that doesn't mean I knew that he bought it. Now, the state is arguing in this case, kind of like it's a basketball game, scoring points. I mean, I don't forget the other, I argue everything he's doing. But, to say that this shows, this is a fact from which he could have suspected, that's a fact from which he could have suspected. The other thing's a fact from which he could have suspected. But, the statute does not make it a crime that you knew or should have known or should have suspected that the officer was an officer. That's not what the crime is. It's not, the fact that a person should have suspected does not make it part of the body of knowledge that he possesses that the person is an officer. We know, we know what we know, some things we suspect and some things we know. In this case, there were reasons why he should have suspected. I'll grant you that. But, he didn't know. New officer in town that hadn't met, at least that's what the officer said. Funny thing, but as soon as Officer Lyons, the off-duty officer, grabbed Mr. Weeks and told him, you're under arrest for pushing Officer Westman. Not a lick of trouble anymore, not a lick. All of a sudden, he was gentle as could be. Suspicion, there was reason to suspect. And circumstantial evidence is always sufficient to prove a criminal case. But, to take he should have suspected from this, he should have suspected from that, and jump to he knew, he knew. Legislature says that's what it takes. He knew, he knew. Could have said he knew or should have known. Could have said he should have suspected. Could have made a virtual absolute liability offense, but it's not. Legislature says it has to be he knew. And in this case, it's just too much of a jump. Just a few seconds outside a tavern, running across a parking lot. A man with no hat, gun though, but basically out of uniform, he's got a polo shirt on. And the word police doesn't appear anywhere. Why do you do that? If you're an officer, why do you do that? Why do you get out in public without your full regalia? You've got a marked car, a marked officer, kids see it like it was a tank coming down the street. Police officers are going to ride on bicycles now. They want to blend in. This officer was dressed to blend in. Well, if you're dressed to blend in, every now and then there's going to be a misunderstanding. Sometimes it works in the police's favor. Sometimes it works against you. And in this case, it worked against me. The state says, and this is a page six of the state's brief. Defendant must have heard somebody say the police were involved. There's no evidence of that. Now, one person testified. Somebody said the police were involved when Mr. Reese was present. Never happened. I've been through this record so many times. Not a word. Not a word. Now, this is probably how the conviction happened. The state's attorney got up there and said, well, he must have heard. He must have known. State's attorney also admitted he forgot to ask that question, which ended up with the Congress of Changes. That question wasn't asked. That question wasn't answered. Also at page six, the state argues there's little doubt, there's little doubt that Mr. Reese should have at least suspected that the police were involved. That's the problem. That's the problem is, so what? First of all, if they were called, it doesn't mean that they were there. But second, this is much more important, is that doesn't mean he knew, knew that man was an officer. Now, even if he had known that the police were called, that might have been information that he could have put into, well, I might encounter an officer. The state cited a case in Congress. The Joel case. And I'm glad they did it. Because in the Joel case, well, it's similar because of the polo shirt. The officer was wearing a polo shirt. He was on duty at the school. He had an SPD, Springfield Police Department, logo on. That's different from this case because we have no such evidence. But when I missed this the first time through that case, it didn't apply very well. But one of the things that the court noted about Joel that showed that he knew that the officer was an officer was handcuffs. The officer had handcuffs. Now, that's not true in this case. But where do you think that the handcuffs were in Joel, in Ray Joel? They were on the juvenile's wrists. He was in custody. When you're in custody, you know darn well that the person who puts you in custody is an officer. And you know, say if you're at the police station or some other venue of that type, that you're going to run across other officers. And it becomes pretty easy to say, well, I know him. I know those are officers. I know that's an officer. He put me in handcuffs. I know he's an officer. In this case, the context is entirely different. Here we have a young man march out into the parking lot and turn loose. Turn loose. Just like that. Not in custody. Not being questioned. No particular responsibilities. On this record, he was entitled to get in his car and drive home. How's he to know that the man over there, no writing on him, in unquote unmarked car, is a police officer? How's he to know? How's he to know? Yeah, he might suspect. Yeah, he might suspect. And he probably should. He probably should suspect. It's not enough. It's not what the statute says. If there are no questions, we'll say the rest of the rebuttal. Thank you, Counsel. Thank you, Your Honor. Thank you. Pass the things down. May it please the Court. Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. In the defendant's reply brief, he says that the state has to prove that the defendant knew beyond a reasonable doubt that one person in the parking lot was a police officer. That's not true. We're not, this defendant doesn't have to know beyond a reasonable doubt. The state has to prove him guilty of a crime beyond a reasonable doubt. But we have to be looking at what did this defendant know, and how do we prove that? How does the state ever prove that? It's unlikely that cases like this are going to have a defendant that says, yep, I knew he was a police officer. You have to look at everything else that's going around and say, this guy had to know that was a police officer. The defense counsel here today says, yeah, he should have suspected that there was a police officer out in the parking lot. He says he should have suspected that the man he saw outside in the parking lot was a police officer. And he's right. Suspicion alone, if that's all there was, was just some kind of suspicion, that might not be enough. But let's look at what everybody else saw that night. We have Officer Westman. He testified that he was attired in uniform, in navy pants, boots, a navy uniform polo shirt with a large yellow police badge embroidered on it. And his name was also embroidered on it. He said that he was dressed the same as he was now, other than the fact that the shirt that he had on at the trial was a cotton shirt, I mean a button-down front shirt. And it's kind of interesting because in the opening brief, the defendant calls this embroidered badge a badge. It's defined by the police officer as a yellow police badge. And in the opening brief, the defense counsel says it's a badge. He says a badge sewn on the shirt in yellow. He kind of tries to back off of that in his reply brief and again here in oral argument. He calls it a thread badge. And he calls it a thread creation. This is defined by the police officer wearing it as a yellow police badge. The fact that it is embroidered into the shirt instead of pinned on it makes little, if any, well it makes no difference. Justice Welch, you asked if he had on a duty belt. Yes, he did. He had on a duty belt with a gun, a flashlight, walkie-talkie, radio. He drives up in a police car. It's a black SUV. It's got the interior red and blue lights on it. And let's move on then to the people that saw Officer Weston in the parking lot. Brittany Watham. She's the victim in this case. She had never met Officer Weston before. But she said she knew Weston was a police officer because, quote, he came up in a police car and his shirt. She also noted that he had on a gun belt and the shirt identified him as a police officer. Shana Flowers, another girl at Bardet, she testified she also had never met Weston before. But she immediately knew he was a police officer because Weston had on a polo shirt with a badge star and a duty belt. She describes it later on as a polo with an emblem. And she said he was standing by the cop car. Ryan Gamble had never met Weston before. But he knew that this was a police officer because, and again I quote, he had the cop shirt, had the badge name tag, belt on with a gun, all sorts of, I mean it was pretty obvious he was a cop. He testified that he saw the defendant coming around the cop car going after Brittany. Sean Lance, also in the parking lot, says that Weston had, quote, a blue police uniform on, army duty belt I suppose, with the gun and so on. He noted that the polo shirt had a badge on it as well as Weston's name. And he said he thought that the Sandoval cops had been wearing those kind of shirts for quite some time. Even going back to what the defendant should have known he was seeing in this parking lot, we have one of the witnesses for the defendant. She's asked if she knew whether the police had been called or not. And she says she doesn't recall whether anybody said the police had been called but, and I'm quoting, I am sure they were because usually the cops are called when there's a fight. So what we have is a fight in the bar. It's forcibly broken up. Defendant is taken out soft. He sees a man in a navy blue shirt with a police badge, his name, his gun belt. He's talking to the woman who has just had her blouse pulled down twice by this defendant. And he charges at them. He charges at her, probably. And the police officer just got, you know, step in front. Are we going to say that if you get angry and lose your temper and don't take the time to look at the person that you're charging at, that it's okay because you didn't know he's a police officer? If you calmly walk out like the other people did and look around and have no doubt, oh yeah, that's a police officer, I see this, this, this, and this. But if you charge out there to attack somebody and don't take the time to read what's on the badge, then you don't know that's a police officer. That cannot be the law. I thought it was kind of interesting that in the opening brief, defendant says, it could have been a private investigator. Now, private investigator, midnight, Sandoval, Illinois. How likely is that? How likely is it that a police officer is called after a bar fight? Much more likely. And as I pointed out in my brief, even if it was a police, a private investigator is still aggravated. So, we need to look at this as counsel for the defendant has said. This is Jackson versus Virginia. This is, could a reasonable jury have come to this conclusion? We need to know that in closing argument, defense counsel strenuously argued that the defendant didn't know that Westman was a police officer. He pointed out the same things that are pointed out in this appeal. The polo shirt, he never met him. I've lived in Union County for 10 years and I've never met a single Union County police officer. So, I don't rely on knowing them personally to know who's a police officer. He pointed, but in closing argument, he points out that the light was from the parking lots. Justice Walsh, there were street lights and parking lights. And I think it's pretty clear since everybody else involved could see clearly and their descriptions make it pretty obvious that they could. It was well lit. It was night, but it was well lit. So, this argument, this exact argument is made to the jury. The jury is carefully instructed that they had to know that Westman was a police officer. They found him guilty. And to say that that was an unreasonable conclusion that no rational jury could come to just sort of flies in the face of Jackson versus Virginia. I want to make a couple of small points here as I conclude. First of all, defendant admits that he knew Officer Westman was engaged in the execution of his official duties. He admits that. This contradicts his position that he didn't know that Westman was a police officer. How can you know someone's engaged in their official duties if you don't know they're an official? So, I believe that this admission in and of itself resolves the question here in this case. Second, well, I've kind of touched on a couple of these that you can't say that I was in such an angry furor charging at someone that I didn't have time to read a badge. Next, this guy shoved this police officer not once, but twice. Maybe the first time around we could somehow think that he couldn't see this. But he stops and turns around and has to shove this guy a second time. He's right there then to say that he still doesn't know this. And finally, the man he fought with was right. The man he's angry with was right. Yet suddenly when he gets outside, he goes to attack Brittany. Why? Why does he attack Brittany? Why is he so angry with Brittany? The answer is simple. He sees Brittany talking to a police officer. And that makes him angry. There's no other reason for him to have attacked Brittany, or tried to attack Brittany. So, I don't see how we can find any, with the defendant's admission, that he should have suspected that this man out there was a police officer when you suspect that somebody outside is a police officer and then you see a man wearing police pants, police boots, duty belt, and a navy blue shirt with a badge and his name on it, you reach the point where you can say, beyond a reasonable doubt, that the defendant knew that man was a police officer. Are there any questions? Thank you, Counsel. Thank you, Your Honor. Got one? Go ahead. Thank you, Your Honor. The badge is referred to as threatened. It's referred to as embroidered. It is not referred to as whether it's set in. As far as we can tell from this record, it's just a solid gold thread thing. Now, the state said in its brief that the badge was exactly the same as a regular badge. And so I came back on the reply brief and got very particular. But I stand by my quotation of the officer in the reply brief. This is an embroidery thing, no description of words. The four laymen that testified were all out in the parking lot before my client got there. And at least three of them, Gamble, Waffen, and Powers, saw the officer blow up. They saw a lot more than my client did. They probably saw inside the car. The fourth one was Lance, who was the one that caused the detour of the front door. And you would have thought that it would take Lance a while to get out to the front, but he beat Mr. Weiss to the front door and was leaning against his car when Mr. Weiss walked out and kicked him. And listen, since we're quoting, listen to what Mr. Lance has to say. I kind of waited out there. The cops were called apparently and on their way. I think one might have already been there. That's in page C416. So he apparently did not see the car arrive, and he also wasn't so sure it was a cop. Everybody else saw a lot more than my client did. I'm not going to bother to go into the way that the firearm statute, that the aggravated battery statute was just defenestrated. That's in my reply brief, and I'll rely on that. But I'd like to point out again the problem with taking suspicion and elevating it to no one. Texting while driving a car, we know we shouldn't do it. No one should ever do it. People do it. And the murder statute is framed in terms of knowing, in terms of knowing. And if you're driving a car and texting, you know or should know that you could kill someone and cause great bodily harm. And what I want to know is in this state, if somebody's texting while driving, fool them if they are. I want to know if they're murderers, if they kill someone. They ought to know. They should know. They should suspect or hurt someone. Is that murder? If that's not murder, then this is not aggravated battery. Thank you.